**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IMPULSE TECHNOLOGY LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 11-cv-02519-JG |
| ) | |
| NINTENDO OF AMERICA INC.; ) | Judge James Gwin |
| ELECTRONIC ARTS, INC.; UBISOFT, ) | |
| INC.; THQ INC.; KONAMI DIGITAL ) | |
| ENTERTAINMENT, INC.; MAJESCO ) | |
| ENTERTAINMENT COMPANY; ) | |
| NAMCO BANDAI GAMES AMERICA ) | |
| INC., ) | |
| ) | |
| Defendants ) | |
| ) | |

**THQ INC.'S AND ELECTRONIC ARTS, INC.'S RESPONSE TO
IMPULSE TECHNOLOGY LTD.'S MOTION TO COMPEL SOURCE CODE**

Defendants THQ Inc. ("THQ") and Electronic Arts ("EA") are video game companies.   The source code for their video games is one of their greatest and most sensitive—if not the greatest and most sensitive of their—assets.   Accordingly, EA and THQ join in Nintendo's Opposition To Impulse's Motion To Compel The Printing Of Source Code, filed today (D.I. 109).   In the interest of efficiency, EA and THQ do not restate the authority and evidence cited in Nintendo's Opposition.   However, EA and THQ do wish to provide the Court with the following summary of relevant facts specific to them (and omitted from Impulse's motion), which further confirm that the impetus behind Impulse's Motion To Compel The Printing Of Source Code (the "Motion") is the convenience of its counsel and not good cause supporting a request to print dozens of— and in some cases 100 or 200 plus—consecutive pages of game source code.

Since April, Impulse's attorneys have spent dozens of hours reviewing THQ's and EA's source code at their outside counsel's offices in Washington DC, one-half of a mile from Impulse's outside counsel's office.   *See* Declaration of Sonal N. Mehta ("Mehta Decl.") at Exh. A (map showing walking distance between Impulse and EA/THQ outside counsel offices in DC); *id.* at Exh. B (exemplary emails confirming Impulse source code inspections).   After a number of such inspections, on June 8, 2012, Impulse requested a production of printed source code from THQ and EA.   *Id.* at Exh. C (June 8, 2012 email from J. Gianola).

On July 2, 2012, THQ agreed to produce printed copies of all requested source code, with the exception of four files containing large blocks of source code.   *Id.* at Exh. D (July 2, 2012 email from S. Mehta).   Those four files comprise 424 pages of source code—212 consecutive pages (in single file) for UFC Personal Trainer game and 211

2

pages (three files of 123, 57 and 31 consecutive pages) for The Biggest Loser game.  *Id.*
Likewise, EA agreed to produce printed copies of all source code requested by Impulse
except for one file that amounted to 39 consecutive pages of code.[1]  *Id.*  Consistent
with the parties' Temporary Confidentiality Agreement (which allows for printing of "a
reasonable number of pages of source code"), THQ and EA requested a phone call to
discuss their objections to the reasonableness of Impulse's print request and to ask that
Impulse focus its request for printouts to relevant portions of those five files.  *Id.* at Exh.
E (July 5, 2012 email from S. Mehta).

On July 9, the parties met and conferred by telephone.  Mehta Decl. ¶ 6.  On
that call, counsel for THQ and EA expressed a willingness to work with Impulse to
determine how to produce the printed source code that Impulse reasonably needed for its
case, which is directed to only a very narrow feature of the accused games.  *Id.*  To that
end, counsel for THQ and EA asked Impulse to identify the portions of the five
outstanding files that it felt it reasonably needed for its case; they also asked that, if
Impulse believed in good faith that it needed the entirety of those files, Impulse please
articulate the reason for such need so that THQ and EA could consider that request.  *Id.*
Impulse agreed that it would attempt to either narrow its request, or alternatively more
clearly articulate its need for THQ and EA to print entire chunks of source code up to
over 200 consecutive pages.  *Id.*

---

[1]     EA has since produced the sole outstanding file, so Impulse has now received all
of the code it requested from EA.  *Id.* at Exh. F (September 12, 2012 letter from J.
Lahtinen). Nonetheless, EA joins in this response because of the sensitivity of its source
code and to urge the Court to provide guidance as to a reasonable limit for printing of
code for the parties to employ going forward.

THQ and EA did not hear from Impulse again on this issue until August 14, 2012, over a month after the parties' meet-and-confer, when Impulse sent an e-mail demanding that THQ and EA immediately produce a number of source code files or else it would file a motion to compel the following day.   Mehta Decl. ¶ 8; *id.* at Exh. G (August 14, 2012 from J. Gianola).   THQ and EA responded that day that they had already produced nearly all of the code that Impulse was requesting (which Impulse apparently had not taken the time to review), but for the five files the parties had discussed on July 9, for which "the ball was in [Impulse's] court to follow-up after [the meet-and-confer] call." *Id.* at Exh. H (August 14, 2012 from S. Mehta).   Counsel for THQ and EA again offered to meet and confer, again hoping that Impulse could narrow its request for source code to reasonable portions of code that actually relate to the issues in the case or at least explain why it felt that it needed to print entire chunks of code.  *Id.*   Impulse never contacted THQ or EA for such a meet and confer, and, instead of discussing the matter, simply filed this Motion.   Mehta Decl. ¶ 11.

This history is telling.   After numerous requests by THQ and EA that Impulse explain *why* it needs to print large sections of code—and even in filing the instant motion—Impulse has never provided any specific explanation as to the reasonableness of its request.   Although it asserts generically that "many of the functions in the source code act in conjunction with other functions in that same file functions," it never identifies those "functions," why their interaction is relevant, or why paper copies of entire chunks of source code are necessary for deposition, motion, or trial exhibits. Motion at 5.   Instead, it simply asserts that the source code files at issue are needed to "provide vital context" and to allow it to question a witness about "various portions" of

4

each file. *Id.*   This explanation is simply insufficient to impose the burden and risk on THQ and EA of allowing printed copies of such large portions of their source code outside of their control.   Indeed, THQ and EA agree with Impulse that "it is reasonable for [Impulse] to have a printed exhibit [] for those very few modules of code that are essential to the issues in this case," and, where Impulse's requests have been more focused, have already provided that code to Impulse.  *Id.*   Likewise, to the extent Impulse believes it requires source code to question witnesses in deposition, THQ and EA agree to bring computers with that source code to the depositions if Impulse provides reasonable advance notice.   Given the above, Impulse has not explained to THQ and EA, let alone to the Court, why printouts of hundreds of pages of source code are "essential to the issues in this case" or why the accommodations THQ and EA have already made— making their code available for inspection, printing out more reasonable sections of code, and agreeing to bring source code computers to depositions—are inadequate.

For the above reasons and as set forth in Nintendo's Opposition, THQ and EA respectfully request that Impulse's Motion be denied and that the Court implement reasonable restrictions on the printing of source code going forward.[2]

---

[2]     Given the sensitivity of their source code and the fact that they have made that code available for inspection a mere half-mile from Impulse's outside counsel's offices, THQ and EA believe that 30 contiguous pages is a reasonable guideline for source code printing.   However, THQ and EA would not object to a limit of 40 contiguous pages (proposed by Nintendo) where Impulse had a good-faith basis for such a request.

Dated:    September 17, 2012

WEIL, GOTSHAL & MANGES LLP

By: /s/ Sonal N. Mehta
Edward R. Reines, admitted *pro hac vice*
Sonal N. Mehta, admitted *pro hac vice*
Derek C. Walter, admitted *pro hac vice*
Evan N. Budaj, admitted *pro hac vice*
Timothy C. Saulsbury, admitted *pro hac vice*
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
edward.reines@weil.com
sonal.mehta@weil.com
derek.walter@weil.com
evan.budaj@weil.com
timothy.saulsbury@weil.com
justin.m.lee@weil.com

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP

Steven M. Auvil (Ohio Bar No. 0063827)
200 Public Square, Suite 2300
Cleveland, OH    44114-2378
Telephone: (216) 363-4500
Facsimile: (216) 363-4588
sauvil@beneschlaw.com

*Attorneys for Defendants and
Counterclaimants
Electronic Arts Inc., Majesco Entertainment
Company, and THQ Inc.*

6

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.    Parties may access this filing through the Court's system.

*/s/ Sonal N Mehta*

Sonal N. Mehta
*Attorney for Defendants Electronic
Arts, Inc., THQ Inc., and Majesco
Entertainment Company*
